JAMES DEAN, APPELLANT, VS. VICTORIA J. DEAN, APPELLEE.

1. The rule as to the character and degree of evidence required to obtain a divorce on the ground of habitual indulgence of a violent and ungovernable temper, as announced in *Palmer vs. Palmer*, 26 *Fla.* 215, 7 *South. Rep.* 864, re-affirmed.

2. The decree of the chancellor solely on questions of fact will not be disturbed unless the evidence clearly shows that it was erroneous. In this case evidence held sufficient to sustain the decree rendered.

Appeal from the Circuit Court for Monroe county.

The facts in the case are stated in the opinion of the court.

*W. Hunt Harris* and *James Dean*, for Appellant.

*L. W. Bethel* and *F. T. Myers*, for Appellee.

MABRY, C. J.:

Appellant filed a bill against appellee for a divorce, the ground alleged being the habitual indulgence of violent and ungovernable temper. After alleging the marriage between the parties, which was about two years before the filing of the bill, it is averred that soon

after the marriage the defendant, indulging in violent and ungovernable temper, commenced to abuse and revile complainant about his former friends and associates, then residing in Washington, D. C., and continued to do so from time to time for months thereafter, and during the said time, and until the commencement of the suit, defendant repeatedly and constantly abused and reviled complainant about his friends and associates residing in Key West, Florida. The bill further specifically alleges various acts of violent and ungovernable temper on the part of defendant on dates mentioned, commencing some three months after the marriage, and continuing down to the filing of the bill. It is not necessary to set out the specific acts alleged, as it is not questioned that they are sufficient, if true, to authorize the divorce.

Defendant positively and unequivocally denied all the allegations of the bill in reference to the ground for the divorce, and also alleged various acts of violence on her by the complainant. It is alleged in the answer that shortly after the marriage, complainant informed defendant that she was not his wife, but only his servant, and his treatment of her was only that of a servant, and various acts of violence on defendant by complainant are specifically alleged.

After issue was joined and the testimony taken, the court decreed in favor of defendant, and dismissed the bill.

The appeal prosecuted by the complainant opens for our consideration the correctness of the decree of the chancellor on the testimony. It was held in Palmer vs. Palmer, 26 Fla. 215, 7 South. Rep. 864, that a divorce on the ground of habitual indulgence of a violent and ungovernable temper will not be granted, unless that temper has been displayed towards complain-

ant habitually, and with the effect of rendering life an oppressive and intolerable burden, and making it impracticable to discharge marital duties under such burden. Occasional outbursts of passion, petulance, readiness to anger, frequent and unreasonable complaints, though made in a loud-voiced and boisterous manner, if solely calculated to render the relations between the parties unpleasant and disagreeable, or simply unhappy, do not furnish sufficient cause for divorce. It is also the settled rule that a decree of a chancellor solely on questions of fact will not be disturbed unless the evidence clearly shows that it was erroneous. Fuller vs. Fuller, 23 Fla. 236, 2 South. Rep. 426; Waterman vs. Higgins, 28 Fla. 660, 10 South. Rep. 97; Perez vs. Bank of Key West, decided at this term. After a very careful consideration of the evidence in the record before us, we are of the opinion that it does not clearly show that the chancellor erred in dismissing the bill.

No useful purpose will be subserved by detailing the evidence in this opinion, and in indulging in a general discussion of it. A portion of it is hearsay and entitled to no bearing. As is often the case in such suits the parties are in irreconcilable conflict, both in their allegations in the pleadings and in their testimony, and the court must look to other sources of information than the evidence of the parties themselves in reaching a conclusion.

Appellant directed considerable testimony to the refutation of the charges made against him by appellee, and insists that such charges were not sustained. Conceding that they were not sustained, it did not relieve appellant from the necessity of sustaining his ground for the divorce, and as to this the burden was upon him. Appellee did not file a cross-bill and ask

for a divorce, but filed an answer in which she sought
to defeat the suit against her.   The overthrow of her
charges in the sworn answer can serve no other pur-
pose in the present controversy than to effect her
credibility, or the good faith of her defense.   Much
of the testimony offered by appellant tended to re-
fute his own allegations, as well as those made by ap-
pellee.   It is asserted in the bill that soon after the
marriage appellee commenced to indulge in violent
and ungovernable temper against appellant, and in the
answer it is charged that during the same time he mis-
treated her.   Several witnesses who remained in the
same building and yard with the parties soon after their
marriage, testified that they neither saw nor heard
anything improper between the parties, and that they
both demeaned themselves as husband and wife should
do.   There is testimony, however, showing that the
parties on several occasions were engaged in violent
conflicts with each other, and at such times very im-
proper language was used, and, as the testimony
shows, appellee used most of it.   The difficulty in the
way of appellant is, that with the exception of a few
of such conflicts, it is impossible to say who com-
menced or occasioned them.   Disinterested parties
heard the disturbance and language of the parties,
but they could not tell who was in fault in originating
the violent quarrels and outbreaks between them.  The
parties themselves are so directly in conflict with each
other in reference to such matters as to make it im-
possible to say which one was telling the truth about
them.   We have been influenced to a considerable ex-
tent in refusing to disturb the decision of the chan-
cellor by the testimony of a witness in no way im-
peached, and, so far as we can see, was disinterested.
This witness is Josephine Bolio.   She states that she

visited appellee and found her in apparent distress, and at her instance, and after listening to her alleged grievances against her husband, she (witness) went to see appellant and talked to him about the marital trouble. After discussing the temper of appellee, the witness states that appellant said that he had made up his mind that he would not live with appellee again because she was too old for him; that he was only thirty-two or thirty-four years old, and she was nearly fifty; that if it was only the age, he would not mind it, but the bad temper and age together made it so that he could not live with appellee. This witness further states that appellant said he had made a mistake, but it was not too late to correct it; and the one he should have married, and whose disposition he knew all about, was the one he employed in his office as a copyist. The name of the copyist was given, and appellant said that he was going to get a divorce and marry her. It is disclosed by the evidence that trouble had arisen between appellant and appellee on account of his retaining this same young lady copyist in his office, and that appellee insisted that she should go out, but appellant refused to displace her. Most of the statement of the witness, Josephine Bolio, is denied by appellant in rebuttal, but we can not say the chancellor was not authorized to believe her statement, and if what appellant said to her be true, it should discredit him very much in all his efforts to obtain the divorce. While the case is not free from doubt, we do not feel that we should, under the rule stated, disturb the decree of the chancellor on the facts of the case.

An order will be entered affirming the decree.